# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

| | | |
|---|---|---|
| _____ ) | | |
| In re: | ) ) | Chapter 7 |
| | ) | Case No. 03-43473-HJB |
| PATRICE L. HOUSEY, | ) | |
| MARIE HOUSEY, | ) | |
| | ) | |
| Debtors | ) | |
| _____ ) | | |
| | ) | |
| DAVID W. OSTRANDER, | ) | Adversary Proceeding |
| CHAPTER 7 TRUSTEE, | ) | No. 07-04128-HJB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| SANDRA BROWN and | ) | |
| DEUTSCHE BANK NATIONAL | ) | |
| TRUST COMPANY, AS | ) | |
| TRUSTEE FOR MORGAN | ) | |
| STANLEY LOAN TRUST | ) | |
| 2006-NC2, | ) | |
| | ) | |
| Defendants | ) | |
| _____ ) | | |

## MEMORANDUM OF DECISION

Before the Court are cross-motions for summary judgment filed by the plaintiff

Chapter 7 trustee (the "Trustee") and the defendants in this adversary proceeding.  The

Trustee seeks avoidance, pursuant to 11 U.S.C. § 549(a), of a postpetition, unauthorized

transfer of estate property.  For these purposes, the defendants do not deny that the facts

1

establish a voidable transfer under subsection (a), but have raised a defense under

§ 549(c).[1]   Accordingly, the Court must determine whether in this case subsection (c)

excepts the transfer from avoidance.

I.   FACTS AND TRAVEL OF THE CASE

Patrice and Marie Housey (the "Debtors") filed a petition under Chapter 13 of the

Bankruptcy Code on June 9, 2003.  In Schedule A[2] of their bankruptcy petition, the Debtors

disclosed that they owned a two-family house located at 50 Orange Street in Springfield,

Massachusetts (the "Property").  Neither the Debtors nor the Chapter 13 Trustee filed a

---

[1] 11 U.S.C. § 549(a) and (c) provide, in relevant part:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid
a transfer of property of the estate –

   (1) that occurs after the commencement of the case; and

   (2) . . . .

      (B) that is not authorized under this title or by the court.

   . . . .

(c) The trustee may not avoid under subsection (a) of this section a transfer of real
property to a good faith purchaser without knowledge of the commencement of the
case and for present fair equivalent value unless a copy or notice of the petition was
filed, where a transfer of such real property may be recorded to perfect such
transfer, before such transfer is so perfected that a bona fide purchaser of such
property, against whom applicable law permits such transfer to be perfected, could
not acquire an interest that is superior to the interest of such good faith purchaser.

. . .

11 U.S.C. § 549 (2003).  Because the Debtors' case was filed in 2003, the amendments to this
section effected by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005
(BAPCPA), Pub. L. No. 109-8, § 1214, 119 Stat. 23, 195, are not applicable.  Moreover, the
BAPCPA amendments were made to "clarify [§ 549(c)'s] application to an interest in real
property," see House Report No. 109-31, Pt. 1, 109th Cong., 1st Sess. 144 (2005), and would not
change the outcome here.  Further references to the "Bankruptcy Code" or the "Code" are to Title
11 of the United States Code, see 11 U.S.C. § 101 et seq.

[2] See Official Bankruptcy Form 6A, Schedule A - Real Property ("Schedule A").

2

notice of the Debtors' bankruptcy case filing with the Hampden County Registry of Deeds (the "Registry"), whose jurisdiction includes the city of Springfield.

In their original submissions, the Debtors listed the current market value of the Property as $100,000, subject to two mortgages totaling $99,150.81.  On September 5, 2003, the Debtors amended Schedules A and C.  In amended Schedule A, the Debtors reduced the value of the Property to $69,200.  And in amended Schedule C,[3] the Debtors made no request for an exemption in the Property, represented to have no equity per the amended schedules.  The Debtors' First Amended Chapter 13 Plan of Reorganization (the "Plan") was confirmed in January 2004.  The Plan did not provide for a sale of the Property.

On November 4, 2005, with their Chapter 13 bankruptcy case still pending and without court authorization, the Debtors sold the Property to defendant Sandra Brown ("Brown") for $182,900.[4]  To finance the purchase, Brown granted a purchase money mortgage on the Property to New Century Mortgage Corporation ("New Century") for $164,610, which mortgage (the "Mortgage") was subsequently assigned to Deutsche Bank National Trust Company, as Trustee for Morgan Stanley Loan Trust 2006-NC2 ("Deutsche Bank").  The Mortgage was properly recorded at the Registry on November 7, 2005.[5] Brown had no relationship with the Debtors prior to the sale, and it is undisputed that

---

[3] See Official Bankruptcy Form 6C, Schedule C - Property Claimed as Exempt ("Schedule C").

[4] After payment of the outstanding mortgages, settlement charges, and taxes, the Debtors received net proceeds of $36,614.96 from the sale of the Property.

[5] Since that time, Deutsche Bank has foreclosed on the Property, and Brown no longer retains any interest therein.

3

neither Brown nor New Century had knowledge at any relevant time that the Debtors had filed a bankruptcy case.

On July 5, 2006, at the request of the Debtors, the case was converted to one under Chapter 7, and David Ostrander was appointed the Trustee.  On August 14, 2007, he commenced an adversary proceeding against Brown and New Century to avoid the unauthorized transfer of the Property and to recover the Property or its value.  In November 2007, the Trustee amended the complaint to substitute Deutsche Bank for New Century (the "Complaint").  The Trustee thereafter filed a motion for summary judgment only on Count I of the Complaint – his request that the sale of the Property be avoided pursuant to § 549(a).  Brown and Deutsche Bank (the "Defendants") responded with oppositions and a cross-motion for summary judgment on all counts of the Complaint.[6]  After a hearing on the competing summary judgment motions (the "Hearing"), the Court took them under advisement.

## II.    POSITIONS OF THE PARTIES

The Trustee contends that the sale of the Property (the "Transfer") is avoidable under § 549(a) of the Bankruptcy Code as an unauthorized postpetition transfer of estate property.  The Trustee argues  that the Transfer must be avoided, because the undisputed facts establish each element required for avoidance pursuant to § 549(a); namely: (1) a

---

[6] In Count II of the Complaint, the Trustee seeks recovery of the Property or its value, pursuant to § 550 of the Code, from Brown as initial transferee.  In Count III, the Trustee seeks, in the alternative, recovery of the Property or its value from Deutsche Bank as the immediate transferee of Brown, also pursuant to § 550.  See 11 U.S.C. § 550.

4

transfer; (2) of estate property; (3) that was not authorized; and (4) after the commencement of the bankruptcy case.

For these purposes, the Defendants do not deny that all required elements for avoidance of the Transfer under § 549(a) have been met.  But, according to the Defendants, the Transfer is nevertheless excepted from the avoidance provisions by operation of § 549(c).  Section 549(c) protects a transfer of estate property otherwise avoidable under § 549(a) when the purchaser has taken in good faith, without knowledge of the bankruptcy case, and for fair equivalent value.  The § 549(c) exception also requires that a purchaser's interest in the transferred property be perfected before a copy or notice of the bankruptcy petition is filed where interests in real estate may be recorded pursuant to state or local law.  See 11 U.S.C. § 549(c).

The Defendants argue that Brown purchased the property in good faith and without knowledge of the Debtors' bankruptcy case and properly recorded her interest in the Property.  Therefore, because a copy or notice of the petition was never filed in the Registry, the Transfer may not be avoided.  The Defendants have also moved for summary judgment on Counts II and III of the Complaint, arguing that the Trustee is not entitled to recovery under § 550 because the Transfer itself may not be avoided.[7]

---

[7] Section 550 provides, in relevant part:

(a) . . . [T]o the extent that a transfer is avoided under section . . . 549 . . ., the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from –
    (1) the initial transferee . . .; or
    (2) any immediate or mediate transferee of such initial transferee.
    . . . .

11 U.S.C. § 550(a).

In response to the Defendant's cross-motion for summary judgment, the Trustee argues that Brown does not qualify as a good faith purchaser without knowledge of the bankruptcy case. His argument is grounded on the availability of a "bankruptcy index" (the "Bankruptcy Index") through the computer terminals located at the Hampden Registry. In their Joint Statement of Undisputed Facts, the parties stipulated to the following regarding the Bankruptcy Index:[8]

> . . . .

> 20. In addition to the Registry itself, the Hampden County Registry of Deeds houses various indices, including a bankruptcy index. This bankruptcy index is a separate and distinct index that is linked to PACER[9] and not to the Registry.

> 21. The Hampden County Registry of Deeds obtains the bankruptcy records from the United States Bankruptcy Court for the District of Massachusetts through PACER, an outside service to which the Registry subscribes through a paid subscription. The records available through PACER are not official records of the Registry, and the availability of the information through PACER does not cause the information to be recorded with the Registry. M.G.L. c. 36 §§ 14-15.

> . . . .

> 23. The bankruptcy records available by computer terminal at the Hampden County Registry of Deeds are updated by Registry staff, who obtain the information through PACER. According to the Registry staff, the records are updated weekly and contain information about bankruptcy filings for the Bankruptcy Court for the District Of Massachusetts from 1994 to the

---

[8] The joint statement contains a notation indicating that the Defendants do not dispute the veracity of these statements, although they maintain that the information is not material. Material or not, however, the information is critical to understanding and analyzing the Trustee's legal argument.

[9] PACER is the acronym for "Public Access to Court Electronic Records." It is "an electronic public access service that allows users to obtain case and docket information from Federal Appellate, District and Bankruptcy courts . . . . PACER is a service of the United States Judiciary. The PACER Service Center is run by the Administrative Office of the United States Courts." Public Access to Court Electronic Records Overview, http://pacer.psc.uscourts.gov/pacerdesc.html (last visited August 6, 2009), reproduced at Appendix 1.

present. Specifically this information includes name of the debtor(s), the case number, the chapter of the case and the filing date. The bankruptcy records have not been verified by the Hampden County Registry of Deeds. These bankruptcy records are separate from any notices that are recorded or filed with the Hampden County Registry of Deeds.

. . . .

25. According to registry staff, . . . 15 registries currently have no computer bankruptcy indices available[.]

26. According to registry staff, . . . 5 registries currently have computer indices available for bankruptcy and/or probate records[.]

The Trustee argues that knowledge of the Debtors' pending bankruptcy case should be imputed to Brown, because "checking for bankruptcy records simply requires the entry of a few additional keystrokes at the same computer station at which other real estate records can be accessed and viewed." Masse Aff. ¶ 9. Relying on the affidavit of Robert J. Masse,[10] deposition testimony given by the title examiner and closing attorney working on Brown's behalf in connection with the Transfer, and printed materials from certain continuing legal education seminars on title examination standards, the Trustee argues that the title examiner and closing attorney were essentially derelict in their duties by failing to check the Bankruptcy Index to confirm that the sellers (the Debtors) had not previously filed for bankruptcy.[11]

_____

[10] Included with the Trustee's opposition to the Defendants' summary judgment motion was the affidavit of Robert J. Masse, an attorney represented to have extensive experience in title examinations and real estate transactions throughout western Massachusetts.

[11] Specifically, the Trustee maintains, in his memorandum of law filed in opposition to the Defendants' motion for summary judgment, that "[t]he title examiner and closing attorney . . . completely ignored their responsibility for reviewing the available bankruptcy records. The title examiner failed to make any reference to whether or not she had reviewed bankruptcy records in preparing her title report. . . . [The closing attorney] should have been aware of her responsibility, in reviewing the title report, to determine whether bankruptcy records were checked or not." Tr.'s Mem. of Law 6.

The Defendants strenuously argue that the Masse affidavit and seminar materials are irrelevant to the issues presented here. Instead, the Defendants maintain that the issue presented is one of straightforward statutory interpretation – that the language of § 549(c) is clear and unambiguous and does not require consideration of extraneous materials for its interpretation.[12] And, because the undisputed facts demonstrate that notice of the Debtors' bankruptcy was not recorded at the Registry and because Brown paid fair value, acted in good faith, and had no knowledge of the Debtors' bankruptcy case, summary judgment must be entered in the Defendants' favor.

## III.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2) (2009) (made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056). The parties contend, and the Court agrees, that no triable issue of fact exists in this case; no material fact is disputed. Accordingly, the Court reaches its conclusions as a matter of law.

### B.  Section 549(a): Avoidance of Unauthorized Postpetition Transfers

"[S]ection 549 of the Bankruptcy Code . . . provides that a trustee may avoid certain post-petition transfers of property." Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.),

---

[12] Although the Defendants did provide the Court with a copy of the Real Estate Bar Association ("REBA") Title Standard 31 and commentary, they maintained at the Hearing that the Title Standard was not material to the Court's analysis and was provided only in response to the seminar materials provided by the Trustee.

375 F.3d 51, 62 (1st Cir. 2004).  "In order to prevail, the Trustee must establish that there was (1) a transfer; (2) of estate property; (3) that was not authorized; (4) after the commencement of the case."  Grossman v. Madoff (In re Fadili), 365 B.R. 7, 14 (Bankr. D. Mass. 2007); see also Miranda v. Doral Fin. Corp. (In re Marrero), 382 B.R. 861, 865-66 (B.A.P. 1st Cir. 2008).

The Trustee has rightly argued that each of the elements required to avoid the Transfer under § 549(a) has been established: (1) the Debtors sold the Property; (2) the Property was property of the Debtors' bankruptcy estate; (3) the Debtors did not seek, nor did the Court provide, authorization for the Transfer; and (4) the Transfer occurred during the pendency of the Debtors' bankruptcy case.  Were these the only issues before the Court, the Trustee would unquestionably be entitled to summary judgment.  But the Defendants have raised a defense under § 549(c), and the Trustee's entitlement to summary judgment turns on the validity of that defense.  See 11 U.S.C. § 549(a) (trustee may avoid qualifying transfers, "except as provided in subsection (b) or (c) of [§ 549]"); 11 U.S.C. § 549(c) ("The trustee may not avoid under subsection (a)" transfers meeting requirements of that subsection.).

C.      § 549(c): Origins and Overview

The earliest version of the Bankruptcy Act of 1898[13] (the predecessor of the current Bankruptcy Code) provided no protection for purchasers of a Debtor's property after the commencement of the case.[14]  But "[t]he courts would not tolerate a case where the rights

---

[13] Bankruptcy Act of 1898, ch. 541, 30 Stat. 544 (repealed 1978).

[14] See Kelly Culpin, The Validity of Post-Petition Transfers of Real Property: Who Does the Bankruptcy Code's Section 549(c) Protect?, 40 Real Prop. Prob. & Tr. J. 149, 158-59 (2005)

of a bona fide purchaser, who relied on the state real estate records, could be cut off by the filing of bankruptcy by the purchaser's transferor," and many courts interpreted the early Bankruptcy Act to incorporate a bona fide purchaser exception.  Dunham, <u>Postpetition Transfers</u>, at 115.[15]  In 1938, however, Congress amended the 1898 Bankruptcy Act to provide protection for purchasers who purchased a debtor's real estate in good faith and without knowledge of the case.  <u>See</u> Chandler Act, ch. 575, § 21g, 52 Stat. 840, 853 (1938).  The 1938 amendments further provided a method for providing "constructive" notice" of the bankruptcy case – the recording of a notice of the bankruptcy case in relevant

---

("<u>Validity</u>"); Darrell W. Dunham, <u>Postpetition Transfers in Bankruptcy</u>, 39 U. Miami L. Rev. 1, 20, 115 (1984) ("<u>Postpetition Transfers</u>").

[15] <u>See also</u> Cuplin, <u>Validity</u>, at 157-158; William J. Rochelle, III & Gwen L. Feder, <u>Unauthorized Sales of a Debtor's Property: The Rights of a Purchaser Under Section 549 of the Bankruptcy Code</u>, 57 Am. Bankr. L.J. 23, 25 (1983) ("<u>Unauthorized Sales</u>") (citing 4B Collier on Bankruptcy ¶ 70.66[2] at 737-38 (14th ed. 1978); Analysis of H.R. 12889, 74th Cong., 2d Sess. 229-231 (1936)); Alan N. Resnick & Henry J. Sommer, <u>Collier on Bankruptcy</u>, ¶ 549.LH[1] (15th ed. rev. 2009) ("Prior to the enactment of former Section 70d of the 1938 [amendments to the 1898 Bankruptcy Act], there was no statutory law with respect to post-petition transactions in bankruptcy cases.  Judge-made law, compelled by considerations of justice and equity, frequently protected those whose bona fides in dealing with the debtor after bankruptcy were clear.")

land records.[16]  Id.; see also Kaiser-Francis Oil Co. v. Oklahoma (In re Waterford Energy),

No. 07-20844, 2008 WL4411387, *5 (5th Cir. Sept. 30, 2008); Culpin, Validity at 159.

The 1978 Bankruptcy Code carried forward the good faith purchaser exceptions of

the Bankruptcy Act by means of § 549(c).  Thus, in order to defeat a trustee's right to avoid

a postpetition transfer of estate property, the purchaser, who bears the burden of proof,[17]

must establish (1) the purchaser's (a) good faith; (b) lack of knowledge of the

commencement of the bankruptcy case; and (c) payment of fair equivalent value; (2)

perfection of the purchaser's property interest against other bona fide purchasers pursuant

to applicable local law; and (3) that no copy or notice of the bankruptcy petition was filed

---

[16] Section 21g, introduced by the Chandler Act in 1938, provided, in relevant part:

> A certified copy of the [bankruptcy] petition with the schedules omitted, of the decree
> of adjudication or of the order approving the trustee's bond may be recorded at any
> time in the office where conveyances of real property are recorded, in every county
> where the bankrupt owns or has an interest in real property.  Such certified copy
> may be recorded by the bankrupt, trustee, receiver, custodian, referee, or any
> creditor, and the cost of such recording shall be paid out of the estate of the
> bankrupt as part of the expenses of administration.  Unless a certified copy of the
> petition, decree, or order has been recorded in such office, in any county wherein
> the bankrupt owns or has an interest in real property in any State whose laws
> authorize such recording, the commencement of a proceeding under this Act shall
> not be constructive notice to or affect the title of any subsequent bona-fide
> purchaser or lienor of real property in such county for a present fair equivalent value
> and without actual notice of the pendency of such proceeding. . . . Provided,
> however, That this subdivision shall not apply to the county in which is kept the
> record of the original proceedings under this Act.

Chandler Act, ch. 575, § 21g, 52 Stat. 840, 853 (1938).  This section of the Bankruptcy Act, as well
as the earliest version of Bankruptcy Code § 549(c), did not require notice of a bankruptcy to be
filed in order to avoid a transfer when the transferred property was located in the same county
where the bankruptcy case was filed.  In 1984, however, Congress amended § 549(c), extending
the § 549(c) exception to purchasers of a debtor's real property wherever located.  See, e.g.,
Culpin, Validity, at 167; Dunham, Postpetition Transfers, at 86

[17] See Fed. R. Bankr. P. 6001 ("Any entity asserting the validity of a transfer under § 549
of the Code shall have the burden of proof.").

before the purchaser's property interest was perfected.  11 U.S.C. § 549(c).  Elements

(1)(c) and (2) are not in dispute here; the parties agree that Brown paid present fair

equivalent value for the Property and her interest in the Property was perfected against

other bona fide purchasers pursuant to Massachusetts law.

According to the Trustee, however, the Defendants have not established that Brown

was a "good faith purchaser" and have not demonstrated that Brown was "without

knowledge of the bankruptcy case" at the time of the Transfer.  And, at the Hearing, the

Trustee also took the position that the accessibility of the Bankruptcy Index at the Registry

equates to a "filing of a copy or notice of the petition" so as to defeat the § 549(c) defense.

It is to these three issues that the Court now turns.

D.    Analysis

1.    "Good Faith Purchaser . . . "

The term "good faith purchaser"  is not defined in the Bankruptcy Code, and courts

have essentially taken two different approaches in determining its meaning.  The first

approach, relying heavily on Collier's treatise on bankruptcy, requires a case-specific look

at whether (1) the purchaser had knowledge of facts sufficient to prompt a reasonable

person to investigate whether the seller was in bankruptcy; or (2) the transaction was at

arms-length or carried other indicia suggesting that the seller was not trading normally.[18]

---

[18] See, e.g., Brown v. Harris (In re Auxano, Inc.), 96 B.R. 957, 961 (Bankr. W.D. Mo. 1989) ("As to what constitutes good faith, this Court has previously opined that its presence turns on 'whether the transaction carries the earmarks of an arms-length bargain' under the circumstances. Alternatively stated, good faith does not exist when a transferee possesses enough facts that would induce a reasonable person to investigate whether the debtor was in bankruptcy or that such occurrence was imminent.  In the context of section 549, such an investigation would reveal to the transferee that the transferred property belonged to the debtor's bankruptcy estate.") (citations omitted); Evans v. Robbins (In re Robbins), 91 B.R. 879, 886 (Bankr. W.D. Mo. 1988) ("'The question of good faith [ ] depends under the circumstances on whether the transaction carries the

A second line of case law measures a "good faith purchaser" by reference to relevant state or local law.  As one court noted:

> '[G]ood faith purchaser' status is an *element apart from the purchaser's knowledge of the commencement of a relevant bankruptcy case.* This issue depends upon the purchaser's notice regarding competing ownership interests in real property, which is the critical element in establishing the status of a good faith purchaser generally.

D'Alfonso v. A.R.E.I. Inv. Corp. (In re D'Alfonso), 211 B.R. 508, 515 (E.D. Pa. 1997) (emphasis added); see also, In re Ward, 837 F.2d 124, 126-27 (3d Cir. 1988) (noting that "[s]ubsection (c), which sets forth a substantive federal law standard limiting the trustee's power of avoidance, utilizes various local legal rules for the perfection of title for reference points").

Given the purpose and history of the § 549(c) exception, with its long-understood codification of bona fide purchaser status under state and local law, this Court is inclined to agree that a determination of good faith purchaser status requires an application of relevant non-bankruptcy law.  But the Court need not conclusively determine the applicable rule here, as Brown would qualify as a good faith purchaser in either case.

---

earmarks of an arms-length bargain.' Inland Sec, Co. v. Estate of Kirshner, 382 F.Supp. 338 (W.D. Mo. 1974).  Collier, in his bankruptcy treatise, states that a transferee's good faith depends upon whether the transferee 'knew or should have known that [the debtor] was not trading normally but that on the contrary, the purpose of the trade so far as the debtor was concerned was the defrauding of his creditors.' 4 Collier on Bankruptcy, p. 550-9 (15th ed. 1987)."); Culpin, Validity, at 165 n.92 ("According to Brown v. Third Nat'l Bank (In re Sherman), 'Good faith is not susceptible of precise definition and is determined on a case-by-case basis.' 67 F.3d 1348, 1355 (8th Cir. 1995) (citing Consove v. Cohen (In re Roco Corp.), 701 F.2d 978, 984 (1st Cir. 1983)). 'To determine whether a transferee acts in good faith, "courts look to what the transferee 'knew or should have known'" instead of examining the transferee's actual knowledge from a subjective standpoint.' Id. (citing Hayes v. Palm Seedlings Partners (In re Agric. Research and Tech. Group, Inc.), 916 F.2d 528, 535-36 (9th Cir. 1990)).").

The Trustee does not dispute the Defendants' assertion that Brown herself was aware of *no facts* that would put her on notice of the Debtors' pending bankruptcy case or that the Debtors were not "trading normally" or were defrauding creditors.   The transaction is fairly characterized as arms-length.   Thus, under the first approach, which relies on a general duty of inquiry into bankruptcy status in light of suggestive facts known to the purchaser, the Court would conclude that Brown was a good faith purchaser.

The Trustee's contentions, however, are more properly characterized as grounded in Massachusetts law regarding what constitutes a good faith purchaser in real estate transactions.   According to the Trustee, Brown cannot be characterized as a good faith purchaser because the title examiner and closing attorney, working as agents for Brown, "hid their heads in the sand" and failed to take advantage of information readily available to them and that would have put them on notice that a bankruptcy case was pending.

But Massachusetts law does not avail the Trustee either. Massachusetts law requires *actual notice* of a competing, unrecorded interest in order to deprive a purchaser of good faith status.  See Mass. Gen. Laws ("M.G.L.") ch. 183, § 4 (recorded land); M.G.L. ch. 185, § 46 (registered land).   "Actual notice" is strictly construed under Massachusetts law, Board of Selectmen of Hanson v. Lindsay, 829 N.E.2d 1105, 1111 (Mass. 2005); Richardson v. Lee Realty Corp., 307 N.E.2d 570, 572 (Mass. 1974), and even "knowledge of facts which would ordinarily put a party upon inquiry [notice] is not enough," Lindsay, 829 N.E.2d at 1111 (quoting McCarthy v. Lane, 16 N.E.2d 683 (Mass. 1983)).[19]   Indeed, the

---

[19]  See also Richardson, 307 N.E.2d at 572 ("knowledge of facts which might arouse suspicion would not be sufficient to destroy the bona fides of the subsequent purchaser"); Moore v. Gerrity Co., Inc., 818 N.E.2d 213, 216 (Mass. App. Ct. 2004).

14

Massachusetts Supreme Judicial Court (the "SJC") has held that purchasers are not required to examine files or indices extraneous to the official records, even if available at the registry of deeds.  See Assessors of Boston v. John Hancock Mut. Life Ins. Co., 81 N.E.2d 366, 369 (Mass. 1948).

Even before land records were computerized in Massachusetts, some registry offices maintained lists of bankruptcies available for search.  In Assessors of Boston, an insurance company holding a mortgage on certain real estate was assessed taxes on the property that, it argued, should have been assessed against the owner's bankruptcy estate. After the owner defaulted, the insurance company had entered the premises and recorded a notice of that entry.  Id. at 368.  The owner then filed a bankruptcy petition and the insurance company was ordered to turn over the premises as they had become property of the bankruptcy estate.  Id.  When the tax assessors searched the land records, they had notice of the insurance company's entry, but no notice of the intervening bankruptcy proceedings or of the insurance company's surrender of the premises.  Id.  And although an index of bankruptcies was maintained at the registry office, the tax assessors did not search them.  The SJC held that the tax assessors were only obligated by the applicable statute to search "in the records of the county . . . where the estate lies," and further stated that:

> An informal list of bankruptcies voluntarily kept in the registry office by the index commissioners and not by the register would not have been part of the records of the county to which the statute refers, even if it had contained any material information.

Id. at 369.

15

Massachusetts continues to adhere to the principle that only official land records can provide constructive notice of competing interests. Relying on well-established Massachusetts law, the Mass Appeals Court recently reiterated that:

> [T]he only persons who should be affected by constructive notice are those who can obtain actual notice, or even full knowledge, *by means of a search conducted in the conventional method* . . . .

Dalessio v. Baggia, 783 N.E.2d 890, 894 (Mass. App. Ct. 2003) (emphasis added) (quoting 4 American Law of Property § 17.17 at 593 (Casner ed. 1952)).[20]

Requiring purchasers to search unofficial bankruptcy indices where available would diminish the value of having a single record on which purchasers can rely in identifying outstanding interests and encumbrances on real estate.[21] Imposing a duty to search bankruptcy indices, if available, in order to be deemed a good faith purchaser would

---

[20] The SJC has also subsequently spoken on the issue in the context of registered land:

> "[W]e ask whether there were facts within the Land Court registration system available . . . at the time of their purchases, which would lead them to discover that either property was subject to an encumbrance, even if that encumbrance was not listed on their certificates of title. [The purchasers] were obligated to review *only documentation within the registration system* because to require a purchaser to investigate facts not documented within that system would be directly contrary to the purposes of the Land Registration Act."

Jackson v. Knott, 640 N.E.2d 109, 113 (Mass. 1994) (emphasis added).

[21] See, e.g. Lindsay, 829 N.E.2d at 1111 (Discussing purposes of land recording acts and noting that "to make the system self-operative and to notify purchasers of existing claims, the recording acts create a public record from which prospective purchasers of interests in real property may ascertain the existence of prior claims that might affect their interests.") (quoting 14 R. Powell, Real Property § 82.01[3], at 82-13 (M. Wolf ed. 2000)).

Consistent with the SJC's observation that "'the effective operation of the entire process of conveyancing and title assurance depends upon a recording system that excludes from recordation as few instruments as possible,'" Lindsay, 829 N.E. 2d at 1110 (quoting, citing 14 R. Powell, Real Property, § 82.02[3], at 82-86 to 86-87), Massachusetts law provides for the recording of documents indicating that persons with interest in specific real property have filed a bankruptcy case, see M.G.L. ch. 36, § 24A.

16

increase litigation and uncertainty surrounding real estate transfers and good faith purchaser status in Massachusetts. Factual issues would arise regarding the availability of bankruptcy indices at particular registries, the currency of information included in the indices, or whether the title examiner did (or even should) consult the computerized, as opposed to physical, land records. And this is precisely the type of uncertainty recording laws seek to obviate in order to provide an efficient and less costly system for transfer and adjudication of rights in land.

In sum, the Defendants have established that Brown had no actual knowledge of the Debtors' bankruptcy case at the time of the sale. Nor was Brown aware of any facts that would lead a reasonable person to suspect a pending bankruptcy case. The Debtors and Brown had no pre-existing relationship, and the transaction was conducted at arms length. No notice of the bankruptcy case appeared in the official land records, and Massachusetts law does not require purchasers to examine unofficial bankruptcy indices, even where available at the registry of deeds. Thus, the Defendants have carried their burden of proving that Brown was a "good faith purchaser" under § 549.

2.    *" . . . Without Knowledge of the Commencement of the Case . . ."*

Apart from Brown's good faith purchaser status, the Trustee argues that she should not be considered "without knowledge of the commencement of the [Debtors' bankruptcy] case," owing to the availability of the Bankruptcy Index at the Registry. The Bankruptcy Code does not define "knowledge" under § 549(c). Some courts have held that "knowledge" under the Code refers only to *actual knowledge*. See, e.g., Smith v. Mixon, 788 F.2d 229, 232 (4th Cir. 1986). Others have interpreted "knowledge" to include knowledge of facts that would constitute what is commonly referred to as "inquiry notice"

17

– i.e., "a duty of a purchaser to conduct a reasonable investigation upon gaining constructive or actual notice of facts which would make a prudent person suspicious," Stern v. Cont'l Assurance Co. (In re Ryan), 851 F.2d 502, 511 (1st Cir. 1988) (emphasis omitted).[22]   The Court finds it unnecessary, however, to determine whether "knowledge,"

---

[22] Although some courts have used the term "constructive notice" in this context, the Court finds helpful the distinctions between "actual," "constructive," and "inquiry" notice as described by the First Circuit Court of Appeals in In re Ryan:

> Notice is sometimes broken down into various types: constructive, actual, record, implied, imputed, inquiry, etc. . . . A helpful formulation, however, appears in *Tiffany's Real Property*. Separating notice into two main types, actual and constructive, the treatise continues,
>
> > It would seem that one might properly be said to have *actual notice* when he has information in regard to a fact, or information as to circumstances an investigation of which would lead him to information of such fact, while he might be said to have *constructive notice* when he is charged with notice by a statue or rule of law, irrespective of any information which he might have, *actual notice* thus involving a mental operation on the person sought to be charged, and *constructive notice* being independent of any mental operation on his part.
>
> *5 Tiffany's Real Property* § 1284, at 50 (emphasis added).  Thus, "constructive notice" is not really "notice," as that word is commonly used, at all.  Instead, constructive notice is a positive rule of state law that permits the prior purchaser to gain priority over a latter purchaser, *regardless* of whether the latter purchaser really knows of the prior purchase.
>
> Constructive notice is an essential element of the land recording system: if a deed is properly recorded, all further purchasers have constructive knowledge of the deed.  *See* 4 *American Law of Property* § 17.17.  A purchaser, therefore, can protect his interest by the act of recording his deed of purchase. . . .
>
> A term sometimes used as a third and distinct type of notice is "inquiry notice."  But we do not believe "inquiry notice" is a type of notice separate from "actual" or "constructive" notice.  Rather, it is a corollary of both types.  *See* 5 *Tiffany's Real Property* § 1285 (inquiry notice as a form of actual notice); 4 *American Law of Property* § 17.11, at 565 (inquiry notice as a form of constructive notice).  Inquiry notice follows from the duty of a purchaser, when he has actual or constructive knowledge of facts which would lead a prudent person to suspect that another person might have an interest in the property, to conduct further investigation into the facts. . . ."

851 F.2d at 506-07.

as used in § 549(c), encompasses both actual and inquiry notice or actual notice only, for

Brown can be charged with neither.

It is undisputed that Brown had no *actual* knowledge of the Debtors' bankruptcy

case.  Thus, the only questions are whether the availability of the Bankruptcy Index at the

Registry (1) charges Brown with inquiry notice of the pending bankruptcy, or (2) gives rise

to a duty to search that index such that the information available there can be imputed to

Brown.

As earlier stated, "knowledge of the commencement of the case" has been

interpreted to include knowledge of facts sufficient to cause a prudent person to inquire

whether the seller has filed a bankruptcy case.[23]  The Trustee, however, would have the

Court go further and take an approach criticized by the First Circuit in In re Ryan.  In that

case, the First Circuit reversed a bankruptcy court ruling that an improperly executed deed

provided notice of an interest in real estate, despite well-settled state law holding that such

---

[23] See, e.g., McCord v. Agard (In re Bean), 251 B.R. 196, 202 (Bankr. E.D.N.Y. 2000)
(Noting that "knowledge" is not defined in the Code and that "decisional law is relatively sparse,"
the court stated that "courts have uniformly determined that constructive knowledge or inquiry
notice precludes invocation of § 549(a)'s good faith purchaser exception."); In re Auxano, 96 B.R.
at 962 ("'Knowledge' is not defined in the Code or in the legislative history, but is construed in this
District to include constructive knowledge. Constructive knowledge is knowledge of such facts or
circumstances that would ordinarily cause a prudent person exercising the reasonable diligence
expected of him to inquire and learn the critical facts. . . . Perhaps the distinction [between good
faith and knowledge], if any exists, is that good faith can be undermined by knowledge of a broader
range of facts, whereas the knowledge requirement refers only to knowledge of the commencement
of the case."); In re Robbins, 91 B.R. at 886 (Knowledge is "frequently employed to signify
constructive knowledge, which neither indicates nor requires actual knowledge, but means
knowledge of such circumstances as would ordinarily lead on investigation, in the exercise of
reasonable diligence which a prudent man ought to exercise, to a knowledge of the actual facts.
In this connection the rule has been said to have been frequently announced that means of
knowledge may be equivalent to knowledge.  There is also a corollary that one who intentionally
remains ignorant may be chargeable in law with knowledge.  In some connections the word
'knowledge' means either actual or constructive knowledge.") (citing, quoting 51 C.J.S. Knowledge,
pp. 538-39).

deeds, even where physically recorded, did not provide constructive notice to future

purchasers.  The bankruptcy court had concluded that, despite its nonconformity, the deed

provided inquiry notice of an existing interest in the property because a purchaser had a

"duty of good faith inquiry, [which] must certainly extend to the town land records, [ ] the

most obvious source of information regarding the interests of previous purchasers."  851

F.2d at 510.  The First Circuit disagreed, emphasizing that inquiry notice "is moored upon

*the existence of preliminary facts* which serve to put the purchaser on inquiry."  Id. at 511

(emphasis added).  The First Circuit explained:

> This reasoning of the bankruptcy court, if adopted by a state court or
> legislature, might result in an improved land recording system.  We do not
> believe, however, that the bankruptcy court was free to write on a clean slate.
> To accept the suggested expansion of inquiry notice would be to disregard
> the clear [state law] that defectively recorded mortgages do *not* provide
> constructive notice.
> . . . .
> We think the bankruptcy court cut inquiry notice loose from this
> mooring . . . .  *It bypassed the source of the preliminary facts that serve to put
> a purchaser upon inquiry*, and instead simply created, as a matter of policy,
> a new legal duty to search the town land records.  Questions of a purchaser's
> *duty*, however, are by definition in the sphere of *constructive* notice.

Id. (second emphasis added).

Accordingly, a finding of knowledge based on inquiry notice must first be rooted in

a finding that the purchaser had knowledge of facts that would lead a reasonable person

to investigate further.  Here, there is no evidence that Brown possessed any facts which

would have led her to suspect the Debtors had filed a bankruptcy case and was aware of

no facts which would have led a reasonably prudent person to search the Bankruptcy Index

absent some independent duty to do so.

So, does the fact that the Bankruptcy Index was accessible through the Registry computers change this analysis?  The answer must be no.  There is nothing in the language of § 549(c) or its legislative history to suggest that purchasers must perform a bankruptcy search before being afforded protection under § 549(c).

Instead, the history of § 549(c) and its predecessors indicates otherwise.  Section 549 relies on and preserves long-standing systems of real estate recording as created by the states and their localities.  Section 549(c) specifically refers to notices or copies of bankruptcy petitions filed *where a transfer of an interest in such real property may be recorded to perfect such transfer* – i.e., official real estate and land records.  This legislative scheme reinforces the conclusion that Congress assumed that extraneous records were irrelevant.

In sum, the Court rules that knowledge of the commencement of the bankruptcy case is not established by the mere availability of unofficial bankruptcy records at the Registry where the applicable land records are kept.  To impose a duty to search those records would expand well-established state and local law and impose new duties on purchasers of real estate that are not contemplated by § 549(c).  Because Brown had no actual notice of the bankruptcy case, and no knowledge of facts which would lead a reasonable person to further investigate whether the sellers were in bankruptcy, Brown was "without knowledge of the commencement of the case" under § 549(c).

      3.     *". . . Unless a Copy or Notice of the Petition was Filed . . ."*

Even if otherwise acting in good faith and without actual knowledge of the bankruptcy case, a transferee of estate property is not protected by § 549(c) if a copy or notice of the bankruptcy petition has been "filed" in the appropriate land records.  11 U.S.C.

§ 549(c).  At the Hearing, in response to questions from the Court regarding the import, if

any, of Congress's use of the word "filed" (as opposed to "recorded"), the Trustee took the

position that notice of the Debtors' bankruptcy case was "filed" at the Registry because the

Bankruptcy Index was readily available on the computers where searches of the land

records are performed.

There is, indeed, a well-accepted distinction between "filing" and "recording."[24]  The

distinction between the terms, however, does not take the meaning the Trustee proposed

or the Court conjectured at the hearing.  According to Black's Law Dictionary ("Black's"),

*to file* means: "To *deliver* a legal document to the court clerk or record custodian *for*

*placement into the official record*."  Black's Law Dictionary 660 (8th ed. 2004) (emphasis

added).  Although the verb "record" is not defined, "recordation" is, and consists of the "act

or process of *recording* an instrument . . . *in a public registry*."  Id. at 1301 (emphasis

added).  That is, *recording* refers to the entry, indexing, or placement of information onto

the official record, while *filing* refers to the *delivery* of the document to an official

responsible for its recording.

---

[24] See, e.g., Tracey v. United States (In re Tracey), 394 B.R. 635, 640-42 (B.A.P. 1st Cir.
2008) (where statute required "filing," lien was valid upon delivery of documents to clerk despite
clerk's failure to properly index documents; statute did not require "filing and recording" for validity
of lien); Town of Hurley v. N.M. Mun. Boundary Comm'n, 614 P.2d 18, 21 (N.M. 1980) ("Filing and
recording as those terms are known to the law are not synonymous."); State v. Noren, 621 P.2d
1224, 1225 (Utah 1980) ("Although the words 'file' and 'record' have occasionally been used
somewhat interchangeably they have more frequently been interpreted as implying or requiring
different things."); Radway v. Selectmen of Dennis, 165 N.E. 410, 411 (Mass. 1929) ("There is a
well-defined distinction between filing an instrument and offering it for record or causing it to be
recorded.") (internal citations omitted).

The distinction noted in Black's is affirmed in case law throughout the country.[25]

Consistent with this usage and common legal understanding, the Court rules that *filed*, as used in § 549(c), means the copy or notice of the petition must have been given to an official responsible for placing the document on the official record.   Here, although information regarding the Debtors' bankruptcy was available at the Registry premises, there

---

[25] See, e.g., The Washington, 16 F.2d 206, 208 (2d Cir. 1926) ("'Filing' means the delivery of the thing filed into the actual custody of the proper officer . . . ."); In re Labb, 42 F. Supp. 542, 543 (W.D.N.Y. 1941) ("A contract is filed 'when it is delivered to the proper officer, and by him received, to be kept on file.'") (quoting Presidents and Directors of Manhattan Co. v. Laimbeer, 15 N.E. 712, 713 (N.Y. Sup. Ct. 1888)); In re Grodzins, 27 F. Supp. 521, 524 (S.D. Ca. 1939) ("Filing a paper consists in presenting it at the proper office, and leaving it there, deposited with the papers in such office."); Hirsch v. Md. Dep't of Natural Res., 416 A.2d 10, 19 (Md. 1980) ("In modern usage, the 'filing' of a paper consists in placing it in the custody of the proper official who makes the proper indorsement thereon.") (quoting Levy v. Glens Falls Indem. Co., 123 A.2d 348, 352 (Md. 1956)); Hurley, 614 P.2d at 20 ("'[T]o file' a paper, on the part of a party, is to place it in the official custody of the clerk. . . . 'Record' is defined . . . as . . . [t]o transcribe a document, or enter the history of an act or series of acts, in an official volume, for the purpose of giving notice . . . and for preservation."); Noren, 621 P.2d at 1225 ("'Recorded' has been held to signify 'copied or transcribed into some permanent book' while 'filing' signifies merely delivery to the proper official."); Pers. Loan & Fin. Corp. of Memphis v. Guardian Disc. Co., 332 S.W.2d 504, 507 (Tenn. 1960) ("The word 'filing' is in no way synonymous with recording . . . it merely means the receipt in this office."); Covington v. Fisher, 97 P. 615, 617 (Okla. 1908) ("[T]he party filing . . . for record . . . deposits a properly prepared instrument with the register of deeds."); Nat'l Lumber Co. v. Lombardi, 834 N.E.2d 267, 271 (Mass. App. Ct. 2005) ("[T]he lien holder who files the document (i.e., leaves it to be recorded) is not the person responsible for actually, physically recording it . . . ."); Crye v. Edwards, 873 P.2d 665, 668 (Ariz. Ct. App. 1993) ("The duty to file a paper is discharged when the filer places the paper in the hands of the proper custodian at the proper time and in the proper place."); Pease & Elliman Realty Trust v. Gaines, 286 S.E.2d 448, 451 (Ga. Ct. App. 1981) ("The presentation of the instruments to the office of the clerk constituted proper filing.") (citing Albany Nat'l Bank v. Ga. Banking Co., 74 S.E. 267 (Ga. 1912)); Blake v. R.M.S. Holding Corp., 341 So.2d 795, 799 (Fla. Dist. Ct. App. 1977) ("'A paper is said to be filed when it is delivered to the proper officer, and by him received to be kept on file.'") (quoting Bituminous Cas. Corp. v. Clements, 3 So.2d 865 (Fla. 1941)); Fidelity State Bank v. La Tempa, 350 S.W.2d 276, 280 (Mo. Ct. App. 1961) ("Filing consists of delivery of the paper to be filed to the proper officer at the proper place within the proper time, and the receiving of it by him to be placed or kept on file or to be kept in his official capacity.") (citing 76 C.J.S. Records § 4); Beatty v. Hughes, 143 P.2d 110, 111 (Cal. Ct. App. 1943) ("The word 'recorded' in ordinary usage signifies copied or transcribed into some permanent book.") (quoting Cady v. Purser, 63 P. 844 (Cal. 1901)); 76 C.J.S. Records § 3 (2009) ("Filing consists of delivery of the paper to be filed to the proper officer at the proper place within the proper time, and the receiving of it by such officer to be placed or kept on file or to be kept in his or her official capacity.")

was no delivery to an official for the purpose of recording, and information related to the Debtors' bankruptcy was thus not *filed* within the meaning of § 549(c).


IV.    CONCLUSION

The Court is compelled to rule against the Trustee and in favor of the Defendants on their cross-motions for summary judgement, but is not without sympathy for the Trustee's position.  The cost of recording  in the Massachusetts registries notices of all pending bankruptcy cases is, in most cases, prohibitive.[26] And the relative ease with which bankruptcy information can be obtained in some registries of deeds with a minimum of effort presents a frustrating circumstance when estate property is transferred without court authorization.

But while prudence does not always create a legally cognizable standard, neither do legal rules define the outer limits of prudent behavior.  The time, energy, and delay imposed by this litigation could easily have been averted had the professionals involved in the sale of the Property availed themselves of a simple and readily-available tool, presumably made accessible by the Registry to help individuals avoid just this sort of litigation.  Similar problems could be avoided in the future were state law modernized to fit the times and the registries of deeds of the Commonwealth afforded the tools necessary to accommodate a changing technological landscape.  Surely, Massachusetts has no public policy interest in facilitating transfers of real estate by persons with no right to do so.

---

[26] The cost of recording a notice consisting of a one-page document in the Massachusetts registries is $75.00, see M.G.L ch. 262, § 38; M.G.L. ch. 36, § 41; M.G.L. ch. 44B, § 8; the total compensation of Chapter 7 trustees in no-asset cases is $60.00, see 11 U.S.C. §§ 330(b)(1) & (2).

Nevertheless, the Court rules that the Defendants' cross-motion for summary judgment must be granted and the Trustee's motion for summary judgment must be denied.  Although the Trustee has established that all elements for avoidance of the Transfer have been met, the undisputed material facts also establish that Brown was a good faith purchaser without knowledge of the Debtors' bankruptcy case.  And no copy or notice of the bankruptcy petition was filed at the Registry.  Thus, the Transfer may not be avoided.

Orders in conformity with this memorandum shall issue forthwith.


DATED: August 6, 2009                    By the Court,

                                         Henry J. Boroff
                                         United States Bankruptcy Judge

# Appendix 1

**Public Access to Court Electronic Records**

# Overview

Home

FAQs

Topics

## What is PACER?

**P**ublic **A**ccess to **C**ourt **E**lectronic **R**ecords (PACER) is an electronic public access service that allows users to obtain case and docket information from Federal Appellate, District and Bankruptcy courts, and the U.S. Party/Case Index via the Internet. Links to all courts are provided from this web site. Electronic access is available by registering with the PACER Service Center, the judiciary's centralized registration, billing, and technical support center.

Each court maintains its own databases with case information. Because PACER database systems are maintained within each court, each jurisdiction will have a different URL. Accessing and querying information from each service is comparable; however, the format and content of information provided may differ slightly.

PACER is a service of the United States Judiciary. The PACER Service Center is run by the Administrative Office of the United States Courts.

## Why use PACER?

The PACER System offers an inexpensive, fast, and comprehensive case information service to any individual with a personal computer (PC) and Internet access. The PACER system permits you to request information about a particular individual or case. The data is displayed directly on your PC screen within a few seconds. The system is simple enough that little user training or documentation is required.

## Available Information

The PACER System offers electronic access to case dockets to retrieve information such as:

- A listing of all parties and participants including judges, attorneys, and trustees
- A compilation of case related information such as cause of action, nature of suit, and dollar demand
- A chronology of dates of case events entered in the case record
- A claims registry
- A listing of new cases each day
- Appellate court opinions
- Judgments or case status
- Types of documents filed for certain cases
- Imaged copies of documents

## U.S. Party/Case Index

The U.S. Party/Case Index is a national index for U.S. district, bankruptcy, and appellate courts. A small subset of information from each case will be transferred to the U.S. Party/Case Index each night. The system serves as a locator index for PACER. You may conduct nationwide searches to determine whether or not a party is involved in federal litigation. For detailed information on cases found while searching the U.S. Party/Case Index, you will need to visit

the PACER site for the particular jurisdiction where the case is located.

## Availability

The PACER System is available days, nights, and weekends. You can verify all updates to active and recently closed cases without having to make repeated trips to the court to review paper records. If there have been no updates, this can be confirmed in seconds.

## What you need

- A personal computer
- Internet Access
- Javascript enabled web browser

## Cost

The United States Congress has given the Judicial Conference of the United States, the judicial governing body of the U.S. Federal Courts, authority to impose user fees for electronic access to case information. For a history of the electronic public access fee and a current electronic public access fee schedule, click here. All registered agencies or individuals will be charged a user fee. Access to web based PACER systems will generate a $.08 per page charge. The per page charge applies to the number of pages that results from any search, including a search that yields no matches (one page for no matches.) The charge applies whether or not pages are printed, viewed, or downloaded. You will be billed on a quarterly basis for your transactions. You will be allowed to enter a client code of your choosing each time you login to PACER to help facilitate managing the costs.

A measure was approved by the Judicial Conference of the United States in March 2001 stating that no fee is owed until a user accrues more than $10 worth of charges in a calendar year. Consequently, if an account does not accrue $10 worth of usage between January 1st and December 31st each year, all balances will be deleted from our records. This policy change will be effective for the calendar year of 2001, and statements will not be mailed to PACER users whose accounts do not have a balance due of at least $10. Once the balance due exceeds $10, a user will receive a statement by mail which includes the current and previous charges in a calendar year. Please read the announcement detailing this change.

The Judicial Conference, at its September 2003 session, amended the language of Section I of the Electronic Public Access Fee Schedule for the appellate, district, and bankruptcy courts, the United States Court of Federal Claims, and the Judicial Panel on Multidistrict Litigation (adopted by the Judicial Conference pursuant to sections 1913, 1914, 1926, 1930, and 1932 of title 28, United States Code). The previous schedule placed a cap on the eight cents per page charge for Internet access to data obtained electronically from the public records of individual cases in the courts, with a maximum $2.40, the equivalent of 30 pages, for electronic access to any single document. The amendment extends this cap to all case documents, including docket sheets and case-specific reports. The cap does not apply to name searches, reports that are not case-specific and transcripts of federal court proceedings. The cap will apply to all PACER, RACER, or CM/ECF sites. For example: previously, a 50 page document cost $4.00 at 8 cents a page. This same document now only costs $2.40. Users will receive the entire 50 page document but only be charged $2.40. Each attachment in CM/ECF sites is considered a separate document. Therefore, the cap will apply to each attachment over 30 pages separately.



## To Register

To register, fill out one of the registration forms available on this site. There is no cost for registering.

## Policies and Procedures

Click here for current policies and procedures.

---

| Top of Page |

| Register for PACER | PACER Service Center Home Page |

---

*For information or comments, please contact:*

*The PACER Service Center*

